UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| J.F. Meskill Enterprises, LLC | ) | CASE NO. 05-cv-2955 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Acuity, and | ) | |
| Acordia of Ohio, LLC | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Defendant Acordia of Ohio, LLC ("Acordia") has filed a Motion for Judgment on the Pleadings (Doc. 7). This case arises out of Defendant Acuity's refusal to pay a claim by its insured, Plaintiff J.F. Meskill Enterprises, LLC. Acordia is an insurance broker involved with the policy at issue. For the reasons that follow, Acordia's motion is GRANTED IN PART.

**FACTS**

Plaintiff alleges the following. Plaintiff purchased a commercial general liability policy from Acuity. The policy provides $1 million in coverage for "those sums that the insured

1

becomes legally obligated to pay as damages because of personal and advertising injury to which this insurance applies" as well as the defense of lawsuits seeking such damages.

Plaintiff was sued for trade dress infringement by Seville Classics, Inc. ("Seville") on December 10, 2004. Early negotiations led Plaintiff to believe that Seville "did not intend to formally pursue the litigation." On or before March 10, 2005, it became apparent that Seville was moving forward with its lawsuit. James Meskill, Plaintiff's president, contacted Acordia (an insurance broker involved in the procurement of the Acuity policy) seeking advice. Meskill spoke with several Acordia representatives on the phone to report the fact of the lawsuit and to request a defense from Plaintiff's insurer, Acuity. An Acordia employee informed Meskill that the Acuity policy did not cover the Seville lawsuit, but that such coverage could be purchased for future claims. As a result, Plaintiff did not pursue its insurance claim with Acuity.

Plaintiff thereafter settled the Seville lawsuit for approximately $70,000, incurring $177,000 in defense costs in the process. Plaintiff contacted a third party to reevaluate whether the policy provided coverage for the Seville lawsuit and demanded coverage from Acuity in a letter received on July 1, 2005. Acuity acknowledged that the claim was covered by the policy, but denied coverage on the basis of late notice.

Plaintiff brings two claims against Acuity for breach of contract and declaratory relief. At issue here are Plaintiff's claims of negligence and negligent misrepresentation against Acordia. In general, Plaintiff claims that Acordia rendered bad advice regarding coverage. Plaintiff also believes that Acordia should have undertaken its own review of the Seville complaint and informed Acuity that the Seville action was pending.

Acordia has moved for judgment on the pleadings.

**STANDARD OF REVIEW**

Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). A claim is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir. 1989). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993).

"In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

**DISCUSSION**

The threshold question presented by this case is whether Plaintiff's claims of negligence

and negligent misrepresentation are barred by Ohio's economic loss doctrine.[1]  The parties agree that Plaintiff's settlement and legal expenses are economic losses and that both of Plaintiff's claims against Acordia sound in tort.

The economic loss doctrine holds that absent tangible physical harm to persons or tangible things there is generally no duty to exercise reasonable care to avoid economic losses to others.  *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 667-68 (Ohio 1995).  These economic losses may be recovered in contract only.  *Id.*  Plaintiff acknowledges this general rule, but argues that it does not apply to its claims, relying in large part on *Haddon View Investment Co. v. Coopers & Lybrand*, 436 N.E.2d 212 (Ohio 1982).  That case held that "[a]n accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen."  *Id*. at Paragraph 1 of the Syllabus.  The plaintiffs in *Haddon View* were limited partners who sued an accountant who rendered faulty services pursuant to a contract with the limited partnership.  *Id*. at 213.  Because they were not in privity of contract with the accountant, the limited partners had to rely on claims sounding in tort.  The Ohio Supreme Court concluded that such an action was proper, and in doing so, cited Section 552 of the Restatement (Second) of Torts with approval:

> (1) One who * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) * * * [T]he liability stated in Subsection (1) is limited to loss suffered

---

[1] The parties agree that Ohio law applies to Plaintiff's claims against Acordia.

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Haddon View*, 436 N.E.2d at 214 n.3.  The parties dispute whether *Haddon View* is still good law, and if it is, whether the duties announced in *Haddon View* attach to an insured and its broker.

Much of Ohio's development of the economic loss rule occurred after *Haddon View* was decided.  *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* involved a commercial buyer and seller of an arch dryer system.  537 N.E.2d 624, 624 (Ohio 1989).  The arch dryer eventually malfunctioned, damaging the product itself and costing the buyer significant additional expenses.  *Id*. at 628.  Even though the parties had a contract with explicit limitations on the seller's liability, the buyer's subrogee sought to recover against the seller under theories of negligence and strict liability.  *Id.* at 627.

The Ohio Supreme Court first recognized the "general rule . . . that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable."  *Id.* at 630.  However, its ultimate decision did not have such a broad sweep.  It recognized that previous decisions had allowed recovery of purely economic losses when the parties were not in privity of contract.  *Id*. at 634.  However, those cases did not address "whether economic loss may be recovered in strict liability where the parties *are* in privity of contract."  *Id.* (emphasis in original).  The court concluded that they could not.  Commercial buyers are relegated to claims under the Uniform Commercial Code, and

"in the absence of injury to persons or damage to other property the commercial buyer may not recover for economic losses premised on theories of strict liability or negligence." *Id*. at 635.

The Ohio Supreme Court discussed the interplay between the cause of action recognized in *Haddon View* and the economic loss doctrine in *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206 (Ohio 1990). The *Floor Craft* plaintiff was a flooring contractor that entered into a contract to install flooring as part of a hospital renovation project. *Id*. at 206. Its portion of the project went awry as a result of the architect's specification of incompatible flooring and sealant. *Id*. The contractor and the architect each had contracts with the hospital, but not with each other. *Id*. When the flooring contractor brought claims for negligence against the architect, the architect countered that the claims were barred by the economic loss doctrine. *Id*. at 208.

The flooring contractor asked the Ohio Supreme Court to apply *Haddon View* and Section 552 of the Restatement to the contractor-architect relationship. *Id*. at 211. The Ohio Supreme Court declined the invitation. The court's survey of other jurisdictions found little support for expanding these duties to contractors and architects. *Id*. at 209-11. Unlike the accountant in *Haddon View*, "the architects' services are generally extended to an unresolved class of persons unfixed in number." *Id*. at 211. Absent project management responsibilities, the parties' relationship could not justify liability under the cause of action recognized in *Haddon View*. *Id*. Because the flooring contractor could not recover under *Haddon View*, its claims were barred by the economic loss doctrine. *Id*. at 212.

It is notable that the flooring contractor's contract with the hospital clearly addressed the relationship between the contractor, architect and hospital. *Id*. at 212 n.4. The contract

6

explicitly disclaimed any special relationship between the contractor and architect.  The architect did not have any control over how the contractor performed its work.  Moreover, the contract also addressed liability.  If the work was performed as required by the contract, but faulty as the result of the architect's specifications (as the flooring contractor claimed), the contractor was not responsible to the hospital for the excess cost.  *Id*.

A recent Ohio Supreme Court case further clarified the interplay between *Haddon View* and the economic loss rule.  In *Corporex Dev. & Constr. Mgmt. Inc. v. Shook, Inc.*, the plaintiff DSI contracted with Corporex for the construction of a hotel.  835 N.E.2d 701, 703 (Ohio 2005).  Corporex then hired Shook as a subcontractor to perform concrete work.  Upon discovery that the work was faulty, both Corporex and DSI sued Shook.  Because it had no contract with Shook, DSI's claims were based only in negligence and implied warranty.  DSI argued, and the lower court held, that there was a sufficient "nexus" under *Haddon View* to allow its claims despite the economic loss rule.  *Id*.

The Ohio Supreme Court reversed.  *Haddon View* did not create a blanket "nexus" exception to the economic loss rule.  *Id*. at 705.  Rather, "[l]iability in *Haddon View* was based exclusively upon [a] discrete, preexisting duty in tort . . . ."  *Haddon View* recognized only the following:

> professional liability, and thus a duty in tort, [exists] only in those limited circumstances in which a person, in the course of business, negligently supplies false information, knowing that the recipient either intends to rely on it in business, or knowing that the recipient intends to pass the information on to a foreseen third party or limited class of third persons who intend to rely on it in business.

*Id*. (citing Restatement (Second) of Torts § 552).  *Corporex* thus makes clear that although tort claims are generally barred by the economic loss doctrine, the discrete tort generally referred to

7

as negligent misrepresentation is not.  *Id*; *see also Laurent v. Flood Data Servs., Inc.*, 766 N.E.2d 221, 227-28 (Ohio App. 2001) (holding that a negligence claim is barred by the economic loss doctrine while a negligent misrepresentation claim is not).

Applying these holdings to the case at bar, it is clear that Plaintiff cannot maintain its negligence claim against Acordia.  Numerous courts have held that negligence claims for economic loss do not survive the economic loss doctrine.  *See Chemtrol*, 537 N.E.2d at 630 (explaining that "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable"); *All Erection & Crane Rental Corp.,* 1:01-cv-1282, at 7 (N.D. Ohio Apr. 9, 2004) (holding that the economic loss doctrine barred a negligence claim without regard to whether the parties were in privity of contract).  These decisions are confirmed by the Ohio Supreme Court's holding in *Corporex*, which recognized the *Haddon View* claim of negligent misrepresentation, while rejecting an attempt to bring a negligence claim.  *Corporex*, 835 N.E.2d at 705.

Although Plaintiff attempts to recast its negligence claim as one of "professional negligence" akin to attorney malpractice, the Court finds it highly unlikely that the Ohio Supreme Court would recognize an independent insurance broker malpractice claim in light of its recent economic loss decisions.[2]  The Court recognizes that the Ohio Supreme Court has stated that an action against an insurer was "roughly analogous to a malpractice action" in determining the appropriate statute of limitations.  *Kunz v. Buckeye Union Ins. Co.*, 437 N.E.2d 1194, 1196 (Ohio 1982).  However, this was prior to Ohio's wholesale adoption of the economic

---

[2] Unlike an attorney-client relationship, it is not entirely clear who the broker represents.  Here, Plaintiff alleges that Acordia was Acuity's agent.

8

loss doctrine.

Some Ohio Courts have held that insurance agents or brokers have a duty to exercise reasonable care in procuring the requested insurance.  However, the economic loss doctrine was not asserted in those cases.  *E.g., The Island House Inn, Inc. v. State Auto Ins. Cos.*, 782 N.E.2d 156, 158-59 (Ohio App. 2002).   Moreover, this duty is fairly limited and could arguably be read as a contract claim, since the broker failed to procure the coverage the insured wanted to purchase.  *See Fiorentino v. Lightning Rod Mut. Ins. Co.*, 682 N.E.2d 1099, 1104-05 (Ohio App. 1996) (discussing whether a claim against an insurance agent for failing to obtain coverage sounds in contract or tort for statute of limitations purposes); *Craggett v. Addell Ins. Agency*, 635 N.E.2d 1326, 1332 (Ohio App. 1993) (explaining that "an insurance sales agency has a duty to exercise good faith in obtaining only those policies of insurance which its customer requests."). Finally, while some cases have suggested a negligence duty to advise on coverage terms,[3] that duty is better confined to the negligent misrepresentation tort adopted in *Haddon View* and reaffirmed in *Corporex.*

Thus, if Plaintiff is to avoid the economic loss doctrine, it must state a claim for negligent misrepresentation as set out in *Corporex* and *Haddon View*.  Acordia first argues that Plaintiff cannot do so because all of the parties are commercial entities.  Acordia points out that courts within the Sixth Circuit have made broad pronouncements that the economic loss doctrine bars tort claims in commercial transactions.  *See HDM Flugservice GmbH v. Parker Hannafin Corp.*, 332 F.3d 1025, 1029-30 (6th Cir. 2003) (explaining that "commercial parties lacking privity, as

---

[3]  *E.g., Island House*, 782 N.E.2d at 159 (Ohio App. 2002); *First Catholic Slovak Union v. Buckeye Union Ins. Co.*, 499 N.E.2d 1303, 1305 (Ohio App. 1986).

opposed to non-commercial parties, [are] foreclosed from recovering economic losses"); *Trgo v. Chryser Corp.*, 34 F. Supp. 2d 581, 594 (N.D. Ohio 1998) (holding that "whether privity exists or not, commercial parties cannot recover for solely economic loss in tort under Ohio law"); *All Erection & Crane Rental Corp. v. Acordia Northwest, Inc.*, 04-3862, 11 (6th Cir. Jan. 18, 2006) (holding that commercial parties are limited to claims for breach of contract or claims under the Uniform Commercial Code).

However, the Sixth Circuit did not apply this language to negligent misrepresentation claims[4] and the Ohio Supreme Court has not done so either.[5] *See Chemtrol*, 537 N.E.2d at 629-30 (addressing claims of products liability and negligence); *Queen City*, 653 N.E.2d at 615 (addressing a negligence claim). In fact, *Flugservice* explicitly held that "the economic loss rule

---

[4] *See Flugservice*, 332 F.3d at 1030 (applying the economic loss doctrine to claims of strict liability, implied warranty and negligence, while deciding that "the economic loss rule does not apply to claims of negligent misrepresentation"). Some district courts have declared that negligent misrepresentation claims are barred by the economic loss doctrine. *Trgo*, 34 F. Supp. 2d at 595; *Picker Int'l, Inc. v. Mayo Foundation*, 6. F. Supp. 2d 685, 688-89 (N.D. Ohio 1998). The Court declines to follow *Picker* or *Trgo* for a number of reasons. First, these holdings were decided before and are directly contrary to the Ohio Supreme Court's decision in *Corporex* and the Sixth Circuit's decision in *Flugservice*, both of which reaffirmed the validity of a negligent misrepresentation claim in spite of the economic loss doctrine. Both cases also involved parties attempting to avoid the terms of a contract. *Trgo*, 34 F. Supp. 2d at 587; *Picker*, F. Supp. 2d at 689. The holding in *Picker* is also dicta, since the defendant did not provide business advice, and plaintiff could not support its negligent misrepresentation claim in any event. *Id.* at 689.

[5] Ohio courts have stated that there is "no basis for distinguishing between so-called commercial and noncommercial buyers." *Ohio Dept. of Admin. Servs. v. Robert P. Madison Int'l, Inc.*, 741 N.E.2d 551, 557 (Ohio App. 2000).

10

does not apply to claims for negligent misrepresentation." *Flugservice*, 332 F.3d at 1032.

Acordia's argument that commercial entities are barred from bringing negligent misrepresentation claims simply cannot be reconciled with *Corporex, Flugservice* and the negligent misrepresentation tort recognized in those decisions. The negligent representation cause of action contemplates that "a person, *in the course of business*, negligently supplies false information, knowing that the recipient . . . intends *to rely on it in business*." *Corporex*, 835 N.E.2d at 705 (emphasis added); *Flugservice*, 332 F.3d at 1033.

Moreover, the cases cited by Acordia involved traditional commercial transactions, not the giving of business advice. As Acordia notes, in this case Plaintiff did not seek its advice while attempting to procure insurance. Plaintiff already had insurance. It treated Acordia as a trusted advisor with expertise in insurance. This is the sort of situation that the negligent misrepresentation tort was meant to deal with. Indeed, a number of Ohio courts have considerd negligent misrepresentation claims against insurance brokers. *Merrill v. William E. Ward Ins.*, 622 N.E.2d 743 (Ohio App. 1993) (affirming a negligent misrepresentation verdict against an insurance agent); *Lu-An-Do, Inc. v. Kloots*, 721 N.E.2d 507 (Ohio App. 1999) (considering and rejecting a negligent misrepresentation claim against an insurance agency because no false information was supplied and the plaintiff's reliance was unjustified).

The Court also notes that the plaintiffs in the cases cited by Acordia were attempting to avoid express contractual limitations on the claims they were asserting. *Chemtrol*, 537 N.E.2d at 629*; Trgo*, 34 F. Supp. 2d at 587; *Picker*, 6 F. Supp. 2d at 689; *All Erection & Crane Rental Corp. v. Acordia Northeast, Inc.*, 1:01-cv-1282, at 5 (N.D. Ohio Nov. 4, 2002). Here, Acordia has not identified any contract provision governing Acordia's responsibility for rendering

insurance advice. If such a provision did exist, the parties would be best left to their bargain. *See, e.g., Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 721 N.E.2d 507, 529 (Ohio 1997) (holding that one contractor could not justifiably rely on another contractor's estimate of waste when the master contract stated that "the quantities listed . . . are to be used as approximate and are to be used for the comparison of bids only"). In this case, there is no bargain.

The critical issue, then, is whether Plaintiff has properly stated a claim of negligent misrepresentation. Plaintiff alleges that it was involved in a business transaction of reporting a lawsuit to its insurer, that Acordia was in the business of procuring and placing insurance coverage and that Acordia negligently provided false information by advising Plaintiff that the Seville lawsuit was not a covered advertising injury. Unlike a number of cases where courts have rejected negligent misrepresentation claims, Plaintiff alleges that Acordia provided advice to a limited group or class (Plaintiff) at Plaintiff's behest. *Compare Haddon View*, 436 N.E.2d at 215 ("[W]e conclude that the limited partners in the Car Wash partnerships constitute a limited class of investors whose reliance on the accountant's certified audits for purposes of investment strategy was specifically foreseen by defendant."), *with Laurent*, 766 N.E.2d at 228 (explaining that the flood determination was requested by a third party and that there was no evidence that the defendants knew it was intended to be used by the plaintiff).

Acordia principally challenges the reliance aspect of Plaintiff's negligent misrepresentation claim. Plaintiff alleges that Acordia provided the information knowing that Plaintiff would rely on the information in its business, and even offered to sell Plaintiff a policy that would cover such claims in the future. Plaintiff continues that it in fact did rely on the

information provided by Acordia when it failed to report its claim.

Acordia counters that an insured cannot justifiably rely on a broker's representations regarding the contents of an insurance policy in light of the insured's countervailing duty to read and understand its policy. *Island House*, 782 N.E.2d at 158-59; *Fry v. Walters & Peck Agency, Inc.*, 750 N.E.2d 1194, 1200 (Ohio App. 2001); *Craggett*, 635 N.E.2d at 1332. Plaintiff concedes such a duty, but responds that it is a matter of comparative negligence that cannot be resolved in a motion to dismiss.

Two aspects of the policy are at issue. The first is the provision covering advertising injuries. Plaintiff alleges that Acordia advised that trade dress claims were not covered under this provision, when in fact they were. The second is the notice provision that Acuity invoked to decline coverage. That provision provides as follows:

> **2.    Duties in the Event of Occurrence, Offense, Claim or Suit**
>
> \*     \*     \*
>
> b.    If a claim is made or *suit* is brought against any insured, you must:
>
> > (1)    Immediately record the specifics of the claim or *suit* and the date received; and
> >
> > (2)    Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or *suit* as soon as practicable.
>
> c.    You and any other involved insured must:
>
> > (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or *suit*.

It is not readily apparent that the advertising injury provision includes claims of trade

dress infringement.  *See, e.g., Westfield Cos. v. O.K.L. Can Line*, 804 N.E.2d 45, 48 (Ohio App. 2003) ("Courts, insurers, and insureds have struggled with the interpretation of 'advertising injury' coverage provisions in commercial insurance policies.").  The Court thus finds that the cases cited by Acordia are distinguishable.  In each cited case, the policy provision at issue unambiguously precluded the coverage sought by the insured.  *Island House*, 782 N.E.2d at 157; *Fry*, 750 N.E.2d at 1201; *Lu-An-Do*, 721 N.E.2d at 511-12; *see also Brown v. Woodmen Accident & Life Co.,* 616 N.E.2d 278 (Ohio App. 1992) (noting that "the insurance policy was 'clear and unambiguous'" and granting summary judgment that reliance on a contrary representation was not justified).  Where coverage is unclear, Ohio courts require a comparative negligence analysis.  *Wanner Metal Worx, Inc. v. Hylant-Maclean, Inc.*, No. 02CAE10046, 2003 WL 186558, *8 (Ohio App. 5th Dist. Apr. 7, 2003); *Gerace-Flick v. Westfield Nat'l Ins. Co.*, No. 01-CO-45, 2002 WL 31168883, *9 (Ohio App. 7th Dist. Sept. 26, 2002); *Nichols v. Progressive Ins. Co.*, 2002 WL 1311859, *8 (Ohio App. 10th Dist. June 18, 2002); *Bedillion v. Tri-County Ins. Agency*, No. 15722, 1993 WL 27381, *3 (Ohio App. 9th Dist. 1993).  Accordingly, dismissal is not appropriate.[6]

The contractual notice provision does not justify dismissal either.  Plaintiff's Complaint alleges that "early discussions and negotiations with Seville led Meskill to understand that Seville did not intend to formally pursue the litigation.  That circumstance changed in 2005."

---

[6] Acordia also contends that a statement regarding coverage cannot be the basis of a negligent misrepresentation claim because it is a statement of law.  However, the only cited authority arose in the context of a fraud claim.  *Lynch v. Dial Finance Co.*, 656 N.E.2d 714, 720 (Ohio App. 1995); *Yendes v. Shaw*, 79 N.E.2d 181, 182 (Ohio App. 1948).

Plaintiff then "telephoned Acordia and spoke with several Acordia representatives to report the fact of the law suit and to request a defense from Meskill's insurer." "[O]n the advice and encouragement of Acordia, Meskill did not pursue its insurance claim with Acuity at that time."

These allegations must be taken as true. In light of these allegations, Plaintiff's failure to provide the necessary written notice can be attributed to the advice of Acordia. Although Plaintiff may be charged with knowledge of the written notice requirement, there is little reason to submit written notice when there is no claim. Plaintiff's failure to provide written notice is a subject more appropriate for a comparative negligence analysis or a summary judgment motion.

### **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is GRANTED as to Plaintiff's negligence count and DENIED as to Plaintiff's negligent misrepresentation count.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/7/06